**PARKER et al. v. RASH et al.**

Court of Appeals of Kentucky.
Feb. 9, 1951.

William J. Wigginton, Woodward, Bart-lett, Hobson & McCarroll, all of Owens-boro, for appellants.

Byron, Sandidge & Holbrook, Owens-boro, for appellees.

CLAY, Commissioner.

This suit was brought by appellees to enjoin appellants from constructing an of-

fice building on Frederica Street in the City of Owensboro, on the ground that such use of the property involved would conflict with the general zoning ordinance of the City. The Chancellor adjudged that a special amendatory ordinance authorizing the structure, and a building permit issued pursuant thereto, were invalid and void; and permanently enjoined appellants from constructing on their property a "doctors' office building." The issues have been exceptionally well briefed by counsel for both parties.

In 1947 the Zoning Commission of Owensboro prepared a comprehensive zoning plan, which was enacted into ordinance by the City. In 1949 appellants purchased a lot with a residence thereon located at the southeast corner of 17th and Frederica Streets. This lot measures 90 feet by 160 feet. Under the zoning plan then in effect, the property was in an "M–1 multiple family district."

Property located in an M–1 district may properly be used, in addition to residential purposes, for: boarding houses, tourist homes, public schools, churches, libraries, and charitable institutions. Permitted uses also include a "hospital" or a "professional office," but the latter must be incidental to residential occupancy.

In 1950 appellant, Dr. W. H. Parker, conceived the idea of tearing down the residence on his lot and erecting in its place a doctors' office building. The contemplated structure would have two stories and elevator service. Adequate space and facilities were to be provided for two doctors on each floor. In addition, the plans call for treatment rooms, a nurses work-room, a "recovery room," space for secretarial assistants, and an X-ray room. The estimated cost of the building was $100,000, and the drawings show it to be an attractive, modern brick building.

Appellant applied to the Planning and Zoning Commission to have his lot reclassified from an M–1 zone to a "Central Commercial District." The Commission, after a hearing, unanimously approved the proposed change. Thereupon the City, by ordinance, amended the original zoning ordinance to incorporate appellant's lot in "zone C2," thereby authorizing "the erection and construction of a modern, well equipped doctors' office" on said premises. A permit to erect such a building was thereafter issued. Appellees attack the amended ordinance and permit as arbitrary, unreasonable and discriminatory, and the Chancellor so held.

On this appeal appellant makes two principal contentions: (1) the proposed office building is in reality a "hospital," and therefore its construction would constitute a permissive use of his property within the M–1 zoning classification originally established in the general zoning ordinance, and (2) the amendatory ordinance was justified in the interest of public health, morals, convenience and welfare under the provisions of KRS 100.420.

Appellant's first contention cannot be sustained. What he proposes to erect is not a hospital. The term identifies an institution which, as a general rule, has facilities for furnishing patients more than temporary medical or surgical treatment. It is commonly understood to be a place where persons obtain complete care, including food and shelter. It likewise has a public character, which a private professional office does not. A doctor's office certainly has something in common with a hospital, but the two are not the same in the ordinary meaning of the terms.

The original zoning ordinance itself recognizes this fact. Permissible uses in M–1 zones are "hospitals" and "professional (doctors') offices." If they were the same, there would be no necessity for establishing two separate classifications.

Appellant himself has shown he clearly recognizes the distinction. In a letter to the Planning and Zoning Commission, he stated the purpose for which he wished the lot re-zoned. He stated: "I desire that re-zoning for the sole and only purpose of building an attractive, modern and up-to-date doctors' office. The building, if permitted, will be so constructed as to be useful for that purpose and that purpose only. * * *."

■ It is plainly evident that Dr. Parker's proposed structure will be an office building and not a hospital.

■ Appellant lays great stress on the case of Crain v. City of Louisville, 298 Ky. 421, 182 S.W.2d 787, wherein we held an institution which partook of the character of both a nursing home and a hospital was a permissible use of property which was zoned for a "hospital" or a "nursing home." The fact that a proposed use may be permissible because it has the character of two proper uses does not authorize the erection of a structure which in part conforms to a permissible use, but otherwise is prohibited. We conclude, therefore, that appellant must rely upon the amended ordinance which changed the zoning classification of his property.

■ There is no question but what the amended ordinance constituted "spot zoning." The ordinance simply selected one lot, owned by one person, and created for it a particular zoning classification different from that of the surrounding property. This type of legislation has generally been condemned. See note in 149 A.L.R. 292, wherein it is stated, page 293: "So, generally speaking, it has been held that where an ordinance establishes a small area within the limits of a zone in which are permitted uses different from or inconsistent with those permitted within the larger, such "spot zoning" is invalid where the ordinance does not form a part of a comprehensive plan of zoning or is for mere private gain as distinguished from the good of the common welfare."

This subject was carefully considered by this Court in the recent case of Polk v. Axton, 306 Ky. 498, 208 S.W.2d 497, 499. There the City of Louisville by ordinance attempted to convert appellant's lot from a "two-family district" to an "apartment district" so that he could use his residence to accommodate additional tenants. We held the ordinance arbitrary, discriminatory and invalid. It is difficult, if not impossible, to distinguish that case from the present one.

■ Dr. Parker insists, however, that the amended ordinance was justified in view of the circumstances the City Commissioners could properly consider. He points out that Owensboro has shown a rapid growth from 1930 to date; that there are crowded conditions in the doctors' offices in the City; that downtown traffic conditions are bad; and that Frederica Street already has mixed residential and commercial zoning. We think these conditions are common to most every city of any size in the United States. They may call for substantial changes to be made from time to time in particular *areas* of a zoning plan. Their existence, however, could not justify special regulations which have no uniformity of application, and which single out particular pieces of property.

■ It is significant that the general planning and zoning ordinance was enacted in 1947 after a comprehensive survey of the conditions in Owensboro, and only after plans were made for the future growth and development of the City. The original plan would be worthless if each individual could have it changed to suit his own inclinations. The imposition of restrictions upon the use of property by legislative bodies has been recognized as a valid exercise of the police power. It can only be justified as serving some real public interest. No such power exists to promote particular enterprises of private persons.

■ It is contended, however, that the proposed use of appellant's property will substantially contribute to the general welfare. In a sense every lawfully conducted enterprise so contributes. A drugstore, a grocery, a freight yard, a steel mill or a shoe factory, each and every one tends to promote the general welfare because they furnish goods and services upon which the public depends in the maintenance of its high standard of living. Yet, just as Section 59 of our Constitution prohibits the General Assembly from passing special or local acts, accepted constitutional principles forbid lesser legislative bodies from passing special laws to promote private interests, even though "the general welfare" is somehow affected.

690

The quoted phrase has become in recent years a sort of sacred cloak covering a multitude of laws, regulations, institutions and activities which cannot be justified on more specific grounds. Before too long it may be that everything will be permitted and permissible in the name of "the general welfare." As of this writing, such time has not quite arrived. Therefore we cannot say Dr. Parker's proposed contribution to society is sufficiently in the public interest to authorize the discriminatory classification of his property.

It is not necessary, as appellant contends, that appellees show pecuniary damage to authorize the relief sought in this action. As pointed out in the Axton case, referred to above, (Polk v. Axton, 306 Ky. 498, 208 S.W.2d 497) appellants are entitled to the benefits which accrue to them from the observance of the general zoning regulations by their neighbors; and even though they suffer no specific financial loss, their special damage affords a sound basis for injunctive relief.

We think the Chancellor correctly adjudicated the rights of the parties.

The judgment is affirmed.