**McCLOUD, Plaintiff-Appellant, v. WOODMANSEE, Building Commissioner et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23426.   Decided March 30, 1955.

William P. Clyne, Cleveland, for plaintiff-appellant.

Paul H. Torbet, Director of Law, Squire, Sanders & Dempsey, Cleveland, for defendants-appellees.

## OPINION

By SKEEL, J:

This appeal comes to this Court on questions of law and fact from a judgment entered for the defendants in the Court of Common Pleas of Cuyahoga County. The action seeks to enjoin the defendant, Clyde Woodmansee, Building Commissioner of the City of Euclid, from issuing a building permit to Theodore P. Herrick, to build a one-story medical center building, together with a parking lot on a two-acre parcel of land having a frontage of 190 feet on the south side of Lake Shore Boulevard located at East 262nd Street. The depth of the parcel is 500 feet. The frontage on Lake Shore Boulevard to a depth of 150 feet is zoned for U3 Uses and the remaining 350 feet is in a U1 Use District. The U3 Use District is defined by the zoning ordinance as follows:

"1. Apartment House.

"2. Community center building, private club, excepting a club the chief activity of which is a service customarily carried on as a business.

"3. Hotel, church, library, museum, school, private playground.

"4. Philanthropic or eleemosynary use or institution other than a penal or correctional institution, hospital or sanitarium other than for mental disease or the insane or feeble-minded."

U1 Uses are:

"1. Public park (not including an amusement park operated for profit).

"2. Single family dwelling."

The evidence shows a plan of the proposed building to be a one-story ranch type structure 40 x 40 on the foundation, with a parking lot sufficiently large to accommodate fourteen automobiles extending fifty feet into the U1 District to the rear of the building.

Section 11 of the zoning ordinance of the City of Euclid in part provides:

"(1) The City Planning and Zoning Commission may in the event of property being allotted which is undeveloped, and in other specific cases, after public notice and hearing and subject to such conditions and safeguards as the City Planning and Zoning Commission may establish, determine and interpret the application of the use district regulations herein established, which permission shall be confirmed by resolution of the Council before becoming effective, as follows:

"(a) Permit the extension of a building or use into a more restricted district immediately adjacent thereto but not more than fifty (50) feet beyond the boundary line of the district in which such building or use is authorized.

"(b) Permit the extension of a non-conforming use or building existing upon the lot occupied by such use or building at the time of the passage of this ordinance

"(c) Permit in a use district any use deemed by the City Planning and Zoning Commission in general keeping with the uses authorized in such district.

"(d) Permit the location in any use district of any use provided such use in such location will not, in the judgment of the City Planning and Zoning Commission substantially and permanently injure the appropriate use of neighboring property, provided the petitioning applicant for such permit files the consents, duly acknowledged, of the owners of eighty (80) percent of the area of the land deemed by the City Planning and Zoning Commission to be immediately affected by the proposed use."

The defendant, Dr. Theodore P. Herrick, filed application with the city council for leave to build a doctors' office building on that part of the two acre tract above described, which is zoned for Class U3 uses, with the parking lot extending fifty feet into the U1 District to the south. The city council referred the request to the Planning and Zoning Commission for their consideration. The Commission, after giving public notice, held a public hearing on Dr. Herrick's request. Following the meeting and after due consideration, the Commission passed a resolution granting the application. This resolution was then referred back to the city council. The city council, by resolution duly passed, affirmed the recommendation of the commission granting the application, ex-

pressly finding as did the commission, that the proposed office building was "in general keeping with the uses authorized in such district."

It is the claim of the plaintiff that the zoning commission was without power to grant the use exception, and that the city council and the zoning commission abused their discretion in approving this use exception.

The question here to be considered might be stated a little more directly. Is the property which the defendant, Dr. Herrick, desires to have rezoned for use as a doctors' office, which use is not included within the U3 use classification, so situated that as to it the requested use change is in keeping with permitted uses in the particular district or neighborhood in a way distinctly more favorable as a reason for granting such change and in keeping with the surrounding development to a greater degree, than would be true as to at least a greater part of the property in the city zoned within the U3 classification so that the same change would not necessarily be required to be granted if application were made under like circumstances in any other place where the zoning classification is for U3 Uses? If the reasons for granting the requested change would apply as well to all property in the U3 classification in the City of Euclid, as is claimed for the property here involved, then the granting of this request would in legal effect constitute an attempt to amend the zoning ordinance in an unauthorized way and would constitute spot zoning. If, however, as to the property here involved there be a substantially recognizable difference from other property in the city, classified under the U3 use, that would, upon fair consideration, require the granting of the application after public hearing, because the change would be in general keeping with the authorized use under the surrounding circumstances of this property, different than would be true as to all other property under the U3 classification, then the administrative and legislative judgment fairly exercised after public hearing granting such exception must be held to be a valid exercise of the administrative and quasi-judicial powers of the city council and the city planning and zoning commission. Under the uncontradicted evidence in this case, when considering the neighborhood, if a doctors' office is permitted as here requested, like applications would have to be granted when requested in any other U3 zone and therefore the granting of this request constitutes spot zoning.

It must be noted that the procedure adopted here in seeking "District Exception" by the order of the city council approving the recommendation of the planning and zoning commission was under the provisions of Section 11 of the Zoning ordinance and not under Section 25A dealing with amendments where procedure quite different is provided. The power of the council and commission under Section 11 is to "interpret" the application of use district regulations therein established. It is difficult to understand how it is possible by means of "interpretation" to decide that a use which is provided for under U4 classification is to be, by that process, lifted bodily out of U4 classification and put into a U3 classification where it is not included in the text of that part of the ordinance and where it is not claimed to be an accessory use as provided by Section 7 of the zoning ordinance.

Section 7 in part provides:

* * *

"A store, trade or business shall not be permitted as an accessory use except that the office of a physician, surgeon, dentist or musician may be located in the dwelling or apartment used by such physician, surgeon, dentist or musician as his private residence and except that any person carrying on a customary home occupation, may do so in a dwelling or apartment used by him as his private residence, provided no persons other than members of his own household are employed in such occupation and no window display or signboard is used to advertise such occupation." * * *

The zoning ordinance provides for offices for use of doctors and other professional people under two separate use classifications, one in subsection Class U4 of Section 3, providing generally for offices and second, by providing for accessory uses under U1 classification as limited by Section 7, supra, where a doctor may have his medical office in his home. It would seem under these circumstances there is no ground to seek by "interpretation" to add to the uses provided for under U3, a use clearly provided for elsewhere, except under circumstances where the evidence would clearly justify a finding that because of the surrounding circumstances in which the vacant land is situated and the development around it, such additional use would be in general keeping with uses authorized in the district. The uncontraverted evidence in this case shows that in spite of the fact that the land fronting on Lake Shore Boulevard for a depth of 150 feet is zoned in Class U3, the uses to which such property has been devoted with two or three exceptions, is for the construction of single family dwellings in keeping with the zoning under Class U1 uses to the north and south of such 150 foot strips. For two or three blocks in each direction, from the subject property, the neighborhood, except as above noted, is built up with single homes of substantial value with a very few vacant lots yet remaining. An office building, no matter how constructed, would be completely out of harmony in such a neighborhood. To hold otherwise would constitute an abuse of discretion.

The appellee depends for the most part, in supporting the claimed right to build an office building in a Class U3 district, on the claim that a doctor's office is, for purpose of complying with zoning regulations, a hospital. It is claimed that since a hospital is provided for in the Class U3 district, that of necessity a doctors' office would, for zoning purposes, come within that category. The courts have not been in agreement when called upon to consider this question.

In the case of Parker v. Rash, 236 S. W. 2d 687 (Court of Appeals of Kentucky, 1951) the exact question was considered and an injunction allowed to prevent the construction of a doctors' office building, in violation of the zoning ordinances of Owensboro, Kentucky. Headnotes 1, 2, 3 and 4 provide:

"1. A doctors' office building, including space and facilities for four doctors and in addition, treatment rooms, nurses' workroom, recovery room and X-ray room, would be office building and not 'hospital' within the purview of zoning ordinance permitting erection of hospital in semi-residential zone.

"2. Fact that proposed use may be permissible under zoning ordinance because it has character of two proper uses, does not authorize erection of structure which in part conforms to permissible use but otherwise is prohibited.

"3. Amendment to city zoning ordinance reclassifying lot so as to permit erection and construction thereon of modern well equipped doctors' office building constituted 'spot zoning' since it simply selected one lot owned by one person, and created for it a particular zoning classification different from that of surrounding property.

"4. Spot zoning to permit erection of doctors' office building would not be justified by city's rapid growth, crowded conditions in doctors' offices in city, downtown traffic conditions, and fact that zone in which affected property stood already had mixed residential and commercial usage."

We are in full agreement with the principle of the Parker case, and hold that a doctors' office is not a hospital and therefore is not a permissible use under Class U3 as above quoted.

For the foregoing reasons, the prayer of plaintiff's petition is granted. Decree for Plaintiff. Order see journal. Exceptions noted.

KOVACHY, PJ, HURD, J, concur.