**STOLL, Plaintiff, v. GULF OIL CORPORATION et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-161796. Decided July 29, 1958.

Dolle, O'Donnell, Cash, Fee & Hahn, for plaintiff.

Graydon, Head & Ritchey, for Gulf Oil Corporation and Tremarco Corporation.

Wilbur H. Apking, Village Solicitor, Silverton, for defendants Hugh H. Gough and the Zoning Board of Appeals of Silverton, Ohio.

## OPINION

By RENNER, J.:

In this case a complete report of all the evidence in the case was reported by the official court reporter. For the purpose of this Opinion, it is unnecessary to review all the facts which were presented at the trial

The plaintiff in the case, Evelyn Stoll, instituted the action against the Gulf Oil Corporation and Tremarco Corporation; William A. Hoffman, who was the Commissioner of Buildings in the Village of Silverton, in this county; and Dr. Hugh H. Gough, William H. Einspanier, Buford

Jackson, Edward LeCompte and Carl Wessling, who were Members of the Zoning Board of Appeals for the Village of Silverton.

The petition alleges that the Members of the Zoning Board of Appeals on or about August 27, 1957; issued, or ordered to be issued to the Gulf Oil Corporation a permit for the erection of a retail gasoline and oil filling station on the property of the defendant, Tremarco Corporation, at the northeast corner of Montgomery Road and Home Avenue in Silverton and further alleges that the permit was issued in violation of the provisions of the zoning ordinances of the Village of Silverton, and that the permit, which was issued for the erection of a gasoline station, is contrary to law and void.

Plaintiff asks for an injunction against the Gulf Oil Corporation and Tremarco Corporation to prevent the construction of a filling station at the northeast corner of Montgomery Road and Home Avenue; that the building permit issued to the Gulf Oil Company for the construction of a gasoline filling station be declared void and of no effect; that any permit or certificate of occupancy, issued by the Commissioner of Buildings to the Gulf Oil Corporation and/or Tremarco Corporation showing that such retail gasoline and oil station to be erected on the property is in conformity with the zoning ordinances of the Village of Silverton, be declared void and of no effect; that the Commissioner of Buildings and/or the Members of the Zoning Board of Appeals be ordered to revoke the building permit, or certificate of occupancy issued to either or both of the corporations, and ordering the Commissioner of Buildings and the Members of the Zoning Board of Appeals not to issue any permits or certificates of occupancy to either of the corporations or any other party for the erection and operation of a retail gasoline and oil filling station on the property heretofore mentioned without securing the written consent of the plaintiff.

Counsel for plaintiff have challenged the action of the Zoning Board of Appeals, and the Commissioner of Buildings, in granting and issuing the permit on numerous grounds.

It is conceded that the proposed site for the gasoline filling station at the northeast corner of Montgomery Rd. and Home Ave. is in a Business "A" zone in the Village of Silverton; that plaintiff's real estate is located in a residence zone, across Montgomery Road and within 100 feet of the proposed site; that plaintiff did not consent, in writing, to the issuing of the permit for the construction of the filling station and that Gulf Oil Corporation placed large gasoline storage tanks on the site after the permit was issued.

Counsel for plaintiff in their brief have divided their arguments on the questions of law and fact involved in this case into eight different categories or propositions.

Their first proposition is that Evelyn Stoll has sufficient standing to bring this action in equity for an injunction. Counsel for the defendant oil corporations concede the right of plaintiff to bring the action. However, they contend that plaintiff has failed by clear and convincing proof to establish that she will suffer irreparable injury if the gasoline station is permitted to be erected and operated.

After plaintiff had rested her case in chief the Court permitted it to be reopened and three witnesses were called on behalf of the plaintiff to testify as to the injury to plaintiff's property. In the order in which they were called John A. Kummer, a service station operator for fifteen years, and president of the Retail Gas Operators Association, testified that the tanks shown in Exhibit 33 would hold approximately twenty thousand gallons of gasoline; that filling stations opened early in the morning and remained open until late hours; that noise attends the operation of filling stations; that bright lights are used in and about filling stations and that a fire hazard is created by large volumes of gasoline in the tanks.

The next witness, Ray H. Young, a real estate broker, testified that a twenty-five percent depreciation of plaintiff's property would result if a gasoline station was installed across the street.

The third witness, James E. Masters, fixed the valuation of plaintiff's property as $12,000 before and $9,000 after the construction and operating of a filling station across the street from plaintiff's property.

Testimony was also given by plaintiff's witnesses that personal inconvenience, discomfort and annoyance is experienced by nearby residents of filling stations caused by the noise in and about the station, and by beams of light thrown into nearby residences from the headlights of automobiles moving in and around the filling station and entering and leaving it. The testimony of these witnesses is uncontradicted.

The fact that defendants' witnesses testified that other businesses, such as Kroger stores, cafes, etc. are more obnoxious than a gasoline filling station is aside the point for those enterprises are not prohibited in Business "A" or "B" zones.

Where building permits have been granted in violation of zoning ordinances, or where a building restriction in a deed has been violated, courts of Ohio have held that such violation, in itself, is sufficient reason for the granting of relief to an injured party in the absence of other proof of irreparable injury.

112 Oh St 628, Pritz v. Messer.

In the foregoing case, injunctive relief was denied because the building permit was granted before the passage of the ordinance and the building was started within the required time as provided by the ordinance.

164 Oh St 138, 57 O. O. 132, Bloom v. Wides; syl. 2:

"Where upon the trial of such action it is shown that such ordinance requirements have been disregarded in the essential details above described, the plaintiffs are entitled to an injunction restraining the construction of such building."

95 Oh Ap 7, 52 O. O. 343, Widmer et al, Appellants, v. Fretti et al, Appellees. at page 348, in its opinion the Court of Appeals of Lucas County said:

"Irreparable injury from a nuisance which a court of equity will enjoin includes that degree of wrongs of a repeated and continuing kind which produce hurt, inconvenience or damage that can be estimated only by conjecture, and not by any accurate standard of measurement.

Irreparable injury does not necessarily mean that the injury is beyond the possibility of compensation in damages, or that it must be very great; and the fact that no actual damage can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very reason why a court of equity should interfere in a case where the nuisance is a continuing one."

The fact that a gambling casino was established and already in operation does not distinguish this last cited case from the instant case as claimed by counsel for the oil corporation.

**11 Oh Ap 368, Dales et al v. Albrecht, syl. 2:**

"Absence of proof of actual damages resulting from the violation of a restrictive covenant in a deed does not defeat the right to equitable relief by injunction."

88 N. E. (2d) 417, **Lavin v. Barbini**, syl. 1, 54 Abs 564 (Court of Appeals, Trumbull County):

"It is common knowledge that a structure for repairing, painting and housing automobiles, while necessary in modern life, is not a nuisance per se, but nevertheless is a fire hazard regardless of how safely constructed or well managed, and gas fumes are more or less constantly emitted from such a structure inimical to public health and safety."

The Court in its opinion, pp. 418 and 419, states:

"We do not doubt but that the council of the City of Girard, in the interest of health, safety and general welfare of the public, could constitutionally enact an ordinance regulating the erection and construction of entrances to the questioned addition to defendant's commercial garage regardless of the zone in which it was being constructed; and it is common knowledge that repairing, painting and housing automobiles (in which gasoline is stored in varying quantities), which likewise it is common knowledge is highly explosive and inflammable, for which the evidence discloses it was being erected, while necessary in modern life, and as counsel for defendant suggests is not a nuisance per se, nevertheless it is a fire hazard, regardless of how safely constructed or well managed, and gas fumes are more or less constantly emitted therefrom inimical to public health and safety, especially where people who live as close thereto as the evidence in the instant case discloses plaintiff lived in the instant case inhale them."

Other cases outside of Ohio of the same import are:

314 Ky. 609, 236 S. W. (2d) 687, Parker v. Rash.

70 F (2d) 377, Welton v. 40 East Oak Street Building Corporation (Cert. Den., 293 U. S. 590).

Plaintiff has not only established irreparable injury but under the cases cited here, she would be entitled to relief in the absence of such evidence.

Under Proposition 2 of their brief, counsel for plaintiff contend that the building permit issued to Gulf Oil Corporation is void because Gulf Oil was not the owner of the property in question at the time the permit was issued. They rely solely on 164 Oh St 138, 57 O. O. 132, **Bloom v. Wides.** The syllabus of that case is as follows:

"1. Interested and affected owners of residential real property may maintain an action to enjoin the construction of a building on nearby

premises, to be used for a mechanized car wash, upon the allegations that neither the application for the building permit nor the permit issued pursuant thereto complies with the mandatory requirements of municipal ordinances that the application must be made by the owner or by his authorized agent; that it must contain the full name and address of the owner, and that the permit itself must show the owner's name.

2. Where upon the trial of such action it is shown that such ordinance requirements have been disregarded in the essential details above described, the plaintiffs are entitled to an injunction restraining the construction of such building."

Section 11.21 (a) of the building ordinance of Cincinnati which was involved in that case, contained the express provision that the application for a building permit shall be made by the owner of the building involved, or by his authorized agent, architect, engineer or contractor employed in connection with the proposed work. Section 11.21 (b) provided that the building permit shall contain the full names and addresses of the owner, applicant and contractor, and a statement in behalf of the owner that the proposed work and occupancy will comply with all applicable laws and ordinances. Another section, No. 11.30, provided that each permit issued by the Commissioner of Buildings shall show the owner's name.

The Supreme Court held that the application for the permit and the permit itself were fatally defective because the mandatory provisions of the Cincinnati Building Code were not complied with.

The Silverton Building Code does not limit the application for building permits to owners or the agent of the owner and it is silent as to whom the permit is to be issued by the Building Inspector. Section 8 provides in part:

"When any person or persons, or corporation shall be desirous of erecting, repairing, changing or altering a building or structure * * * he or they shall make application at the office of the Inspector for a permit to do so * * * If it shall appear to the Inspector that the laws and ordinances of the Village are complied with, he shall give the permit asked for in the name of the Mayor, upon payment of the fee to the Village Treasurer * * *."

The application for the permit to build (exh. 11) dated August 6, 1957, lists the names of Irma F. Bauer and Dorothy Winans, who were the owners of the property and both of them signed the application as owners. The application contained a covenant that the work would in all respects comply with the ordinances passed by the council of the Village of Silverton. Gulf Oil Corporation was listed as builder, and the application was also signed by it, by John B. Clappert who, the evidence shows, was the Agent for the Oil Corporation. The architect was also named in the application.

The building permit (exh. 14) was issued to Gulf Oil Corporation.

The facts in the instant case do not show a failure of compliance with the Silverton Building Code or the zoning ordinances and the law in Bloom v. Wides is inapplicable here. The building permit issued

to Gulf Oil Corporation is not void for the reasons claimed in Proposition 2 of plaintiff's brief.

The evidence fails to support the Oil Corporation's claim that Mrs. Stoll was guilty of laches. She consistently opposed the granting of the permit before the Zoning Board and she acted with dispatch in instituting this action.

Counsel for the Oil Corporations also contend that Section 7.35 of the Silverton Zoning Ordinance is unconstitutional and void. That section reads as follows:

"Gasoline or oil storage above the ground in quantities exceeding One Hundred Ten (110) gallons, except for purposes of retail sale. Provided, however, that no retail gasoline or oil filling stations shall be built or bulk oil stations erected on any lot or land located within One Hundred (100) feet of any property located in Residence zone. Permits for the construction or establishment of said stations may, however, be issued by the Zoning Board of Appeals if written permission is first obtained from the owners of land located within said One Hundred (100) foot radius." (Emphasis added.)

Section 11.10, the hardship or variance Section in the Silverton Zoning Ordinance, is not under attack. Counsel admit that it is similar to corresponding sections everywhere in zoning ordinances, and they expressly state that for the purpose of their attack on Section 7.35, they are ignoring entirely Section 11.10 and the action of the Zoning Board with respect to it. It is their contention that the word "may" in the last sentence of Section 7.35 grants unlimited power and authority to the Zoning Board to issue or refuse building permits when all the property owners located in a residence zone within 100 feet of a proposed gasoline station site consent to the issuance of the permit. They urge that by the use of the word "may" in the last sentence the whole of Section 7.35 is void.

It is conceded by counsel for the oil corporations that the permit could not have been ordered issued by the Zoning Board under Section 7.35 because Mrs. Stoll had not given her written consent to its issuance.

Zoning laws which provide for the orderly development of populated areas have been favorably accepted throughout the United States. However, by their very nature, they have been a source of much litigation and among the most controversial of such laws are those regulating gasoline filling stations. The problem that has confronted the municipal legislative bodies and the officials and boards who administer the Zoning Ordinances, is to enact and administer laws which are flexible enough to meet the demand for filling stations in convenient locations and which are also rigid enough to protect the health, safety, convenience and general welfare of those owning property in close proximity to such stations and the public at large. The public officials and the Courts are aware of the discomforts, inconveniences and dangers from fire and explosions which are caused by the normal operation of filling stations. Because gasoline is highly volatile and inflammable, the storing, handling and dispensing of it has received special attention in Zoning Ordinances, state building codes and by laws placing upon State fire marshals

the authority and responsibility to formulate safety regulations concerning such uses.

Counsel for the oil corporations cite and discuss three cases which they say illustrate the unconstitutionality of section 7.35 viz.:

State, ex rel. Standard Oil Co. v. Combs, 129 Oh St 251, 2 O. O. 152; L. & M. Investment Co. v. Cutler, 125 Oh St 12, and State, ex rel. Selected Properties v. Gottfried, 163 Oh St 469, 56 O. O. 397.

In the first two cases, the Supreme Court decided that the sections of zoning ordinances which were attacked were constitutional and counsel say they have no quarrel with those decisions.

The Combs case was an action in mandamus to compel the Public Service Director of Zanesville to issue a permit for a filling station. The Zoning ordinances of Zanesville prohibited service stations within the corporate limits of the city without the written consent of 51% of the owners within a radius of 600 feet.

Counsel for the oil corporations refer to an admission and stipulation by counsel, in the statement of facts in the Combs case, that once the 51% requirement was met the Director had no discretion in the matter, but was compelled to issue the permit. Counsel for the oil corporations also express as their opinion that, if the 51% requirement under the Zanesville ordinance was met the Director had to issue the permit. The statement of facts in the case reveal that the application for the permit was not accompanied by the required consents and the opinion of the Supreme Court is absolutely silent on this question. What the Supreme Court did say was that there was no improper delegation of legislative power to the property owners within 600 feet and the section of the Zanesville ordinance was constitutional.

In the Cutler case the Supreme Court had before it the question of the constitutionality of a hardship or variance section of the Cleveland Zoning Ordinance. The section under attack was held to be constitutional by six judges of the Court; the seventh member did not participate. Counsel for the oil companies say they have no quarrel with this decision. The Cleveland section is very similar to the hardship section 11.10 in the Silverton ordinance and also to section 24 of the Village of Parma in Selected Properties v. Gottfried.

It was claimed in the Cutler case that the section of the ordinance was unconstitutional because the ordinance offered no guides or criteria for the guidance of the Zoning Board. This same argument is advanced here.

At page 18 of the opinion the Supreme Court says:

"The chief question therefore is whether the provision of the zoning ordinance authorizing the board of appeals to vary applications in case of 'unnecessary hardships' is constitutional—whether it constitutes a delegation of legislative power.

It is an elementary principle of our jurisprudence that in determining whether a law or ordinance is constitutional every reasonable presumption will be indulged in favor of its constitutional validity, * * *."

On the same page the Court quotes from an early opinion of Judge Ranney in Railroad Co. v. Commissioners, 1 Oh St 88, as follows:

" 'The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' "

And at page 21 of the opinion the Court states:

"Manifestly the legislative body cannot fix any adequate standard or rule that would fit every individual case of hardship. That is impossible; and therefore the legislative body has confined the determination of that feature to an administrative agency—in this case the board of appeals—as a fact-finding body which could determine whether in any specific case unusual hardships might result if the strict letter of the ordinance were complied with."

On page 21, it quotes with approval from an opinion of the New York Court of Appeals, Dowsey v. Village of Kensington, 257 N. Y. 221, as follows:

"* * * 'Doubtless it is difficult, perhaps impossible, for a legislative body enacting a zoning regulation to envisage the result of its regulation upon each piece of property which may be affected, or to weigh and adjust each private and public interest that may be involved.' He said that the function of the board of appeals was 'to provide a measure of flexibility in the application of a general rule imposed for the general welfare. * * *' "

And also from Tighe v. Osborne, 150 Md., 452, the following:

" 'With the increased tendency to provide in laws and ordinances general rules and standards, leaving to administrative boards and agencies the task of acquiring information, working out the details, and applying these rules and standards to specific cases, the courts have relaxed to some extent the particularity with which they formerly required the laws and ordinances to set out the rules and standards by which the delegated power was to be limited.' "

And at page 23 the Court stated:

"Manifestly, since unusual hardships would affect some and not other owners in a zoning district, the determination whether the restriction imposes unusual hardships upon an individual's property must be left, in specific instances, to the discretion of administrative agencies, but even so the power conferred upon them cannot be unreasonably or arbitrarily exercised."

From their general purport it is apparent that the pronouncements of the Supreme Court, in the Cutler case, were not to apply to the facts in that case alone, but were intended as guides for the lower courts of Ohio.

The third case cited by counsel for the oil corporations, State, ex rel. Selected Properties v. Gottfried, supra, was decided by the Supreme Court in 1955. Paragraph two of the syllabus in that case reads as follows:

"A municipal zoning ordinance which provides merely that the use of property for a gasoline and oil filling station in a retail business district is allowed only in accordance with the provisions of a variance permit issued by the Board of Appeals is unconstitutional and void for

want of standards or criteria for the guidance of such administrative tribunal and for the protection of citizens."

Only four of the judges concurred in this paragraph. Judges Stewart and Bell concurred in paragraphs one and three but dissented from paragraph 2 and also from the judgment of the Court. Judge Taft's dissent was general. It is this case which counsel for the oil corporations say is controlling on the question of the constitutionality of Section 7.35 of the Silverton ordinance.

Judges Stewart and Taft, in their separate dissenting opinions, stated that the Gottfried case was in direct conflict with the Cutler case, and it is reasonable to assume that, because of his dissent to paragraph two of the syllabus and the judgment, Judge Bell was of the same opinion although he did not express it.

The zoning ordinance of the city of Parma contained a general hardship or variance section, No. 24 (b), which is set forth in the dissenting opinion of Judge Taft. This section resembled those which are generally incorporated in zoning ordinances. It is similar to section 1281-23 (b) of the Cleveland Ordinance in the Cutler case and also to section 11.10 of the Village of Silverton. The majority opinion took notice of the Cutler case but distinguished the facts in that case from those in the case before it. The Court made it very clear that section 6 (f) must stand alone and it showed no disposition to salvage it by construing its meaning in relation to section 24 (b) which latter section was not even referred to in the majority opinion. Section 6 (f) of the Parma Zoning Ordinance reads as follows:

"Section 6. Within any retail business district, no building or premises shall be erected, used, arranged or designed to be used in whole or in part for other than one or more of the following specified uses:

"(f) Variance permit. The following uses are permitted in a retail business district only in accordance with the provisions of a variance permit issued by the Board of Appeals after proper notice to directly affected property owners or their agents:

"(1) Gasoline and oil filling stations."

The weakness of this section is apparent. It provides only that proper notice shall be given to directly affected property owners. Who such owners are is left solely to the discretion of the zoning board and there is nothing to indicate what is meant by proper notice. After such notices are given to whomever the directly affected property owners may be, the Board was empowered to act, regardless of the will of those directly affected.

The Court found first that section 6 (f) lacked standards or criteria for the guidance of the board and the protection of the Parma citizens, and therefore it failed to meet the test of constitutionality.

At the bottom of page 474 (163 Oh St) the Court declared this section unconstitutional for another and most unusual reason which was stated as follows:

"Furthermore, the provisions involved in the instant case are unconstitutional not only in their terms but in their application by the respondents, as shown by the numerous instances in which competitors

of the relator have been granted permits while the relator met with a denial. The extent of this arbitrary action is shown by the fact that one applicant was given permits for the construction of two gasoline stations in the neighborhood, * * *"

To meet the contention of counsel for the oil corporations that the word "may" vests in the Silverton Zoning Board arbitrary power to grant or refuse a permit once the written consents are obtained, counsel for plaintiff cite several authorities to support their contention that the word "may" should be construed as "must" or "shall." I do not agree with counsel for plaintiff. The word "may" was well chosen by the Silverton council, and was meant to be permissive and not mandatory.

Under section 12.01 of the Zoning Ordinance, the Commissioner of Buildings of Silverton has the duty to grant or refuse permits and that section provides that no building permit shall be issued for any building which in its construction, location, or use, would violate the provisions of that ordinance.

Section 8 of the Building Code of Silverton (exh. 1) charges the Inspector of Buildings with the responsibility of issuing building permits when the laws and ordinances of the Village are complied with.

As previously stated in this opinion, the storing, handling and dispensing of gasoline has received special attention from the state legislature by charging the State Fire Marshal with the duty of formulating and adopting regulations concerning its use. The State Building Code also contains numerous regulations as to the construction of buildings which must be complied with. The Silverton Zoning Ordinance also placed additional restrictions on gasoline stations. Section 7.77 reads as follows:

"Gasoline filling, oil and greasing stations having any oil draining pit or exposed appliance located within twelve (12) feet of any street line, or within fifty (50) feet of the residence district, except where such appliance or pit is within a building and distant at least twelve (12) feet from every vehicular entrance or exit to the premises."

The Building Code and the zoning ordinance each provide that there must be filed with applications for permits plans and specifications of the proposed building.

Section 15 of the Building Code provides that in case of dissatisfaction with the inspector's decision the question shall be referred to the Council of Silverton for decision.

Section 11.03 provides for appeals under the Zoning Ordinance to the Zoning Board of Appeals and section 7.35 grants to that Board itself the authority and responsibility to issue the permit when the owners within 100 feet consent in writing.

It is unreasonable to believe that the Silverton Council, which created the Zoning Board of Appeals and enacted the Zoning Ordinance controlling its actions, intended that such Board should be compelled to issue a permit when the required written consents were obtained from a limited number of persons, all of whom could be personally interested in the proposed filling station. The equal powers vested in both the Council and the Board to issue permits requires the coordinated action

of both. Independent action by both may easily result in the issuance of permits for filling stations which may violate the State Building Code, the regulations of the State Fire Marshal, the Silverton Building Code and section 7.77 of the Silverton Zoning Ordinance and which may also violate the basic and essential concepts and principals of planning and zoning incorporated in the preamble to the Silverton Ordinance which reads in part as follows:

"To regulate and restrict and limit, in the interest of the public health, safety. convenience, comfort, prosperity and general welfare, the uses and the location of buildings and other structures * * *."

It does not follow that because "may" is used permissively that Section 7.35 is unconstitutional by reason of Selected Properties v. Gottfried. supra. as claimed by counsel for the oil corporations.

Sec. 713.11 R. C., gives municipal legislative bodies authority to create zoning boards of appeal to administer the details of the application of the regulations under §§713.06 to 713.12 R. C. It also authorizes the legislative bodies to delegate the power to hear and determine appeals in accordance with rules and regulations set forth in the districting ordinance and regulations and to permit exceptions to and variations from the district regulations in specified cases or situations.

In Investment Co. v. Cutler, supra, the Supreme Court points out the need and the propriety of such delegation of discretionary power. It cautioned that when such power is conferred upon administrative agencies it must be exercised reasonably and not arbitrarily.

In Selected Properties v. Gottfried. supra. the Supreme Court noticed the Cutler case but did not overrule or criticize the pronouncements of the Court in that case. At least two of the three dissenting Judges were of the opinion that the judgment of the majority in that case was in direct conflict with the decision in the Cutler case. The manner in which the majority Judges dealt with the Parma ordinance clearly indicates that they were not satisfied to merely set aside the discriminatory action of the Zoning Board; they were determined to rid the people of Parma of what they considered a particularly bad section of the ordinance which would only encourage further abuses. There is no indication that the decision in the Gottfried case was to supplant the holding in the Cutler case.

Section 7.35 does not include in its specific standards or controls for the Board's guidance, and the Supreme Court in the Cutler case decided that such controls were not required in the section itself. It pointed out that it was impossible for the legislative body to anticipate every situation which may arise, and that with the increased tendency to provide general rules and standards in zoning ordinances the Courts have relaxed to some extent the earlier rigid interpretations applied to zoning laws. The Court cautioned however that such power conferred upon them cannot be unreasonably exercised.

Whatever power or authority may be granted to a Zoning Board is circumscribed by the basic and controlling rule that all authority granted under the zoning ordinance must be administered and exercised in the interest of the public health, safety, convenience, comfort, prosperity and general welfare. It is a component part of every section and it must be

read into Section 7.35 and all other sections of zoning ordinances. In addition to this any action taken under Section 7.35 must of necessity come within the spirit and intent of the Silverton Zoning Ordinance evidenced by the many restrictions and limitations placed on the use and location of buildings so as to provide for the orderly development of the Village.

When called upon to exercise the authority contained in Section 7.35 the reasons for granting or refusing a permit should be clearly and fully stated in the resolution of the Board.

I am, therefore, of the opinion that Section 7.35 of the Silverton ordinance is constitutional.

In enacting the zoning ordinance the Silverton Council included in it a saving section, similar to §1.12 R. C., which section No. 17 reads as follows:

"Should any provision of this ordinance be decided by the courts to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of the ordinance."

The last sentence in Section 7.35 is clearly severable from the rest of that section and even though the last sentence was held to be unconstitutional, as counsel claims, that sentence alone should be removed.

**8 O. Jur. p. 194, section 93:**

"It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part, and that if the invalid part is severable from the rest, the portion which is constitutional may stand, while that which is unconstitutional is stricken out and rejected; * * *. The rule as to the severability of statutes and the elimination of unconstitutional provisions applies to municipal ordinances, as well as to state and Federal statutes."

The contention of plaintiff's counsel in Proposition Three is that an express finding of hardship is a jurisdictional prerequisite to the granting of a variance on the ground of hardship under the provisions of Section 11.10. To rebut this Counsel for the oil corporations in their brief say—that the Silverton ordinance does not specify that the Board must make an express finding of hardship, and that it merely grants the Board power to act if a hardship does in fact exist. They further allege that the history of the case, as disclosed by the record and the issuance of the permit, clearly shows the Board felt a hardship to exist. This is followed by their statement that the vote of the Silverton Zoning Board of Appeals (exh. 13), conclusively shows that in the exercise of its sound discretion the provisions of Section 11.10 of the Silverton ordinance were applicable to the situation confronting it based upon the evidence introduced at the hearing.

Subsequently, counsel point out that pursuant to the provisions of Section 11.10 the Zoning Board of Appeals can issue a variance for either, or both, of two reasons, namely, where a strict application of any provision would work a hardship or where there is a reasonable doubt as to any provision of the Zoning Ordinance or the Building Zone Map. Immediately following this is the statement that the record does not indicate which of these the Board based its decision upon or

whether it acted with respect to both provisions, and that there is no requirement that it do so. The very fact that either or both of those reasons may be resorted to by the Board emphasizes the need for requiring the Board to expressly find the facts upon which the action is founded.

Later it is said that it is conceded that a hearing was held and arguments made for and against the change; and that the text of those arguments is not before us and that there is no requirement that a record be made of the arguments in such a proceeding. Further along counsel admit that the minutes of the meeting of August 27, 1957, do not show what evidence was offered by either party and there is no requirement that they do. In conclusion they say that it is presumed that the Board of Appeals found sufficient facts from the evidence introduced to authorize the issuance of the permit and that the Board acted in good faith and not arbitrarily.

The following are the minutes of the meeting of August 27, 1957 (exh. 13):

"A meeting of the Appeals Board was called Aug. 27, 1957, 8 P. M. to again hear the appeal of the Gulf Oil Company, on the basis they had new evidence to submit, for permission to erect service station at Home St. and Montgomery Rd.

"Mr. Alton Purcell, attorney, for Mr. and Mrs. Percy Bauer and Mr. and Mrs. Clifford Winans, owners of the property at the site of the proposed station to be erected by the Gulf Oil Company, stated all property owners within a hundred feet had been contacted in regard said proposal. All owners gave permission with the exception of Mr. and Mrs. John Stoll.

"Mr. John Stoll stated—witnesses bearable—he would not sign agreement for erection of any building on this property unless he was paid the sum of five thousand ($5,000.) dollars.

"Mr. John R. Hahn, attorney, representing Mrs. Evelyn Stoll, wife of John Stoll, stated that she, not her husband, John, is the owner of this property and any statement that John Stoll made would have no bearing on her in this case.

"A secret ballot was taken and the results were four to one that a building permit should be issued for the erection of the service station.

"Mr. Everett Foster, Stoll Lane, asked chairman for results of balloting. Request refused by chairman.

"Motion made by Mr. Bluford Jackson and seconded by Mr. Edward LeCompte that meeting be adjourned.

Respectfully submitted,<br>Carl R. Wessling"

A copy of the Appeal to the Board is in evidence (exh. 12). A number of irrelevant reasons why the Board should grant the appeal are set forth. The only reason which could have any bearing upon the issue before the Board appears on the last page of the appeal. In it the owners of the property and the Gulf Oil Company say that the owners have contracted to sell the property to Gulf and if the permit is refused the owners would suffer a loss of approximately $45,000.00. At the trial of the case there was no evidence, other than financial loss to the

owners, to support the action of the Board. Counsel for the Oil Corporations concede that disadvantages in property value or income, or both, do not ordinarily warrant a hardship variance. Courts should not indulge in innuendo, surmise and conjecture and legal presumptions as a substitute for tangible proof.

As previously stated in L. & M. Investment Co. v. Cutler, supra, the Supreme Court had before it the question of the constitutionality of a similar hardship section of the City of Cleveland. The Court, in its opinion, stated that in determining whether a law or ordinance is constitutional every reasonable presumption will be indulged in in favor of its constitutional validity. Further along in the opinion the Court said that it is now generally recognized by the Court that in the adoption of modern methods of zoning, since they may seriously affect the quality of the owner's title and may jeopardize the absolute freedom of the use of his property which he previously had enjoyed, the owner may be safeguarded from too severe zoning restrictions; and that sections providing for variances for hardships are provided as an anchor which may relieve him from the strict application of a zoning restriction.

In Investment Co. v. Cutler the hardship section did not specify that the Board must make an express finding of hardship. Nevertheless the Board stated specific reasons upon which it based its decision.

If, as claimed by counsel for the oil corporations, the Zoning Board of Appeals may act without specifying the grounds upon which the variance was granted, the Silverton Ordinance would be subject to the same objection which the Supreme Court of Ohio found to exist in Selected Properties, Inc. v. Gottfried, supra.

Quoting from the Court's opinion, "Clearly this language invests the Board of Appeals with absolute and uncontrolled discretion to determine which property owners may or may not employ their property for this valuable use. Thus the Board of Appeals may act on capricious rules of its own or it may act without any rules whatsoever."

Counsel for defendant Oil Corporations cite no authorities in Ohio or elsewhere in which a reviewing court upheld the granting of a variance permit issued for reasons of hardship under circumstances similar to those in the instant case and I have found none.

Counsel for plaintiff cite a case decided by the Supreme Court of Ohio in 1898. State, ex rel. Meader v. Sullivan, 58 Oh St 504. In that case the action of the Mayor of Cincinnati, in discharging a member of the Board of Supervisors for neglect of duty in office, was under attack. Sec. 2690m R. C., then authorized the Mayor of a city to appoint the Board of Supervisors and to remove them "for neglect of duty or misconduct in office." Paragraphs 1 and 2 of the syllabus in that case read as follows:

"1. The power of removal from office, conferred upon a mayor, in these words: 'For neglect of duty or misconduct in office, the mayor of such city may remove any member of said board,' is a **special authority,** and must be **strictly pursued.** Such power cannot be exercised arbitrarily, but only upon complaint, and after a hearing had in which the officer is afforded opportunity to refute the case made against him.

"2. Nor has the mayor, in such case, authority to proceed to a hearing until charges have been preferred which embody facts that, in judgment of law, constitute neglect of duty or misconduct in office, and of which the accused has had due notice. And, as a requisite to its validity, **the finding and order of the mayor should be so definite as to show. on the face that the power has been exercised according to law."** (Emphasis added.)

Although the facts in that case differ from those here, the same reasoning and conclusions of the Supreme Court apply with equal force in the instant case.

I therefore find that the Zoning Board of Appeals must expressly set forth the facts upon which the hardship is founded as a prerequisite to the granting of a variance permit under the provisions of Section 11.10; that there was a lack of proof of facts which constituted a hardship within the contemplation of law; that the Board acted arbitrarily and the action taken by it is null and void and that the building permit issued as a result of its order is null and void and of no effect.

Proposition seven of plaintiff's brief claims misrepresentation and collusion on the part of the oil corporations and their agents. The evidence presented fails to establish facts sufficient to grant relief to the plaintiff on those grounds.

Proposition eight of plaintiff's brief is that the hardship claimed by Gulf in its appeal of August 7th was already res judicata as the result of the Board's resolution of July 9th, and that the Board was without jurisdiction to reconsider that question. Having previously found that the evidence presented, at the trial of this case, was insufficient to sustain the action of the Zoning Board in granting the permit, it is unnecessary to pass upon the issue presented in Proposition eight.

In conclusion I find that the plaintiff is entitled to an order of this Court declaring the action taken by the Zoning Board of Appeals at its meeting on August 27, 1957, null and void; that the permit issued on August 27, 1957, by William Hoffman, Commissioner of Buildings of Silverton to Gulf Oil Corporation for the erection of a gasoline filling station, at the northeast corner of Home Avenue and Montgomery in Silverton, as a result of the action by the Zoning Board of Appeals on August 27, 1957 is null and void; that the defendants Gulf Oil Corporation and Tremarco Corporation should be permanently enjoined from constructing or causing to be constructed and from operating or causing to be operated a retail gasoline and oil filling station upon the aforementioned property under the building permit issued to Gulf Oil Corporation on August 27, 1957; that the Zoning Board of Appeals should be enjoined from issuing or causing to be issued any building permit or order requiring the Commissioner of Buildings of Silverton to issue a building permit on the Application for a permit filed with him on or about August 6, 1957; and that the Building Commissioner should likewise be enjoined from issuing another building permit on that application and that the Gulf Oil Corporation and Tremarco Corporation pay the costs of this action.

Please present a judgment entry accordingly.