BROOKS, APPELLANT, *v.* VILLAGE OF CANFIELD ET AL., APPELLANTS; COOK CHEVROLET, INC., APPELLEE.

---

⁶Notwithstanding that this case is moot, we feel that the issues involved are of such magnitude as to merit an opinion,

(No. 72 C. of A. 9—Decided July 18, 1972.)

*Mr. Harry Frederick*, for appellant Brooks.

*Mr. Norman Rheuban*, city attorney, for appellants Village of Canfield et al.

*Mr. Joseph R. Bryan*, for appellee Cook Chevrolet, Inc.

LYNCH, J. Plaintiff, Robert E. Brooks, and defendant Village of Canfield, appellants herein, are separately appealing the decision of the trial court which dismissed plaintiff's complaint, which requested an injunction compelling defendant Cook Chevrolet, Inc., to remove a sign erected in front of their business establishment. The sign allegedly was in excess of the maximum total sign area as set forth in Section 1133.09 (b) (2 and 3) of the Canfield planning and zoning code. The sign is a General Motors Dealer identification sign, 92 square feet in dimension, containing commercial lettering on both sides of its panels. The total dimension for both sides of the sign is 184 square feet.

Section 1133.09 (b) (2) of the Canfield planning and zoning code provides, in part, as follows:

"The area of all permanent advertising signs for any single business enterprise * * * shall not exceed a maximum area of 100 square feet. * * * In computing the area of free-standing or protruding signs, all faces on which business name or advertising is displayed shall be considered sign area."

Section 1133.09 (b) (3) of the Canfield planning and zoning code provides, in part, as follows:

"Free-standing signs, not over thirty feet in height, having a maximum total sign area of 100 square feet and with their supporting structure located not closer than ten feet to any street right-of-way line nor closer than fifty feet to any adjoining residential lot line, may be erected to serve a group of business establishments. * * *"

On December 14, 1970, the design committee of Canfield approved the application of defendant Cook Chevrolet, Inc., for the sign here in question, however the issuance of the zoning permit was withheld for the twenty day appeal time provided by Canfield ordinance 1133.11 (d). Zoning permit No. 419 was issued January 4, 1971.

By letter dated January 7, 1971, to the planning commission of the village of Canfield, William E. Masters, councilman and member of the planning commission, appealed the decision of the design committee made on De-

cember 14, 1970, concerning this sign. He recognized that this appeal was beyond the time prescribed by Section 1133.11 (d) (1) and (2) of the Canfield planning and zoning code. He stated that the approval of this sign by the design committee was improper because the sign exceeded the allowable maximum area of 100 square feet prescribed in section 1133.09 (b) (2) of the Canfield planning and zoning code.

By letter dated January 13, 1971, to attorney Norman Rheuban, Canfield village solicitor, attorney Harry Frederick, on behalf of the plaintiff, requested that attorney Rheuban apply under R. C. 733.56 in the name of the municipality of Canfield to the common pleas court for an order of injunction to restrain the execution or performance of the permit issued on behalf of the municipality by the zoning inspector to Cook Chevrolet, Inc., and to restrain the erection of this sign. The reason given for such action is that the proposed sign exceeded the maximum total sign area of one hundred square feet.

The Canfield planning commission had a scheduled meeting on January 14, 1971. Attorney Rheuban attended this meeting and advised the members of plaintiff's letter. The planning commission passed a motion to order a "stay of all proceedings in regard to the sign of Cook Chevrolet." Defendant was not notified of this meeting and was not represented at the meeting.

By letter dated January 15, 1971, attorney Rheuban advised defendant of the above action by the Canfield planning commission and notified all parties that a special meeting of the Canfield planning commission would be held on January 20, 1971.

At the meeting of the planning commission on January 20, 1971, all interested parties were either personally present or represented by counsel. The pertinent excerpts from the minutes of this meeting are as follows:

"A motion was made by Masters, seconded by McGraw, to instruct the Zoning Inspector and/or the City Manager to revoke permit No. 419 issued to Cook Chevrolet, Inc., for the erection of a sign on their premises. Dur-

ing the discussion of the motion, Mr. Norman Rheuban requested of Mr. Don Cook representing Cook Chevrolet that he, Mr. Cook, contact him the morning of January 21, 1971, in regard to what action Cook Chevrolet would pursue in the erection of the sign in question. Mr. Don Cook agreed to this, whereupon Mr. Masters withdrew his motion and Mr. McGraw withdrew his second.

"The meeting was recessed at 10 P. M. January 20, 1971 until such time as the chairman would reconvene it.

"The chairman reconvened this meeting at 7:40 P. M. on February 11, 1971 * * *. A motion was made by Masters, and seconded by McGraw, that in as much as the sign permit problem of Cook Chevrolet, Inc. is now lodged both in Mayor's Court and in the Court of Common Pleas of Mahoning County under Judge Cavalier, the discussion of this matter before the Planning Commission is moot. All members present voted as follows: Masters, McGraw, McLaughlin voted 'aye'. The chairman declared the motion carried."

The evidence revealed that the design, fabrication and installation of this sign was under the control of General Motors. The fabricator of this sign was Cummings and Company, Nashville, Tennessee. The sign was the smallest free-standing General Motors sign available in January, 1971. The erection of this sign was done by Ellet Neon Sign Company of Akron, Ohio. Ellet Neon Sign Company installed the foundation for the sign around January 5 or 6, 1971, and erected the sign on January 21, 1971, from approximately 10 to 11 a. m. until 9 p. m. The cost of the services of Ellet Neon Sign Company was approximately $1,000 and was paid by Cummings and Company, who was paid by General Motors. The entire cost of the sign was estimated at $3,500, on the zoning permit.

Attorney Rheuban learned of the erection of the sign after his lunch on January 21, 1971, and he went to the municipal building. In his opinion the sign was in violation of the Canfield ordinances, and he advised City Manager W. Barry Baker to revoke zoning permit No. 419.

City Manager Baker wrote the following letter dated January 21, 1971, to defendant:

"The Municipal Attorney has advised me that the purported Zoning Permit No. 419 issued to you by the Zoning Inspector on January 4, 1971, is illegal and violates the Codified Ordinances of the Municipality of Canfield. Accordingly, you are advised that you are not authorized to erect or display in any manner the sign proposed on your application for said permit."

Mr. Charles H. Tieche, zoning inspector, delivered this letter to the secretary of Anthony C. Cook, president of defendant Cook Chevrolet, Inc., at approximately 1:30 p. m. Mr. Cook testified that he first saw the letter about 3:30 p. m., at which time the sign was somewhere between seventy and seventy-five percent erected.

Since this letter did not stop the erection of the sign, attorney Rheuban had a policeman arrest the foreman and the two helpers and bring them to the municipal building. Attorney Don Cook talked to attorney Rheuban on the telephone and the employees of Ellet Neon Sign Company were released without charge.

On January 22, 1971, attorney Rheuban filed an affidavit in the Canfield mayor's court against Anthony C. Cook charging him with erecting and maintaining a sign contrary to the Canfield ordinances.

Pertinent parts of Mayor Francis J. McLaughlin's decision are as follows:

"The Mayor's Court, Village of Canfield, after reviewing the testimony finds the Defendant A. C. Cook, Not Guilty of the charges.

"There is doubt in the Court's mind as to the intent of A. C. Cook to break the law of the Village of Canfield. He followed the due process of the law of the Village of Canfield.

"There is also doubt in the Court's mind as to the wisdom of the wording of Village Ordinance in regard to signs. The Court feels the Design Committee was acting in good faith, as was the Zoning Inspector. The Court feels that if as indicated by Exhibit Number 5, Permit Number 427,

that the sign would be legal if advertising only on one (1) side, the Court can find no logical reason why it cannot have advertising on both sides. * * *

"Finally the Court feels it inherently unfair to allow someone to follow due process and then after they have done this, finding them in violation of the Village Code. The Village Legislators should take steps to correct the wording of the Ordinance so as to clarify the meaning of the paragraph regarding signs. * * * "

By letter dated January 22, 1972, attorney Rheuban advised attorney Frederick that no injunctive action was contemplated because the purported sign permit issued to defendant had been nullified and revoked.

The village of Canfield in its answer to plaintiff's complaint joined plaintiff in its prayer for an order compelling defendant to permanently remove this sign because it was in violation of the Canfield zoning laws.

The central issue in this case is whether the zoning permit issued to defendant on January 4, 1971, is valid. Plaintiff and the village solicitor contend that the sign exceeds the size limitations provided in Sections 1133.09 (b) (2 and 3) of the Canfield planning and zoning code; therefore, the design committee had no authority to approve the sign, and the zoning inspector acted illegally when he issued the permit on January 4, 1971.

We feel that there was a presumption of regularity with the issuance of the permit, and that Cook Chevrolet, Inc., had a right to rely on the validity of the permit until challenged in a proper legal proceeding. There are serious procedural questions as to whether either the plaintiff or the village of Canfield are properly before this court, and we will discuss these questions subsequently. However, in the interest of protecting innocent people from the harassment of being arrested in the village of Canfield because of the zeal of certain citizens of Canfield to protect their sense of aesthetic values, we will discuss the merits of the contentions of both plaintiff and the village solicitor.

As a legal abstraction, we feel that plaintiff's interpretation might have some merit. However, if this is the only

interpretation that can be given to the section of the planning and zoning code in question, we would hold that the application of the ordinance is unconstitutional as to this sign.

There is no question that the size of this sign complies with the Canfield ordinances. The issue is the area of commercial advertising on the two sides of the sign. The sign is designed to face the highway, near which it is located, perpendicular so that motorists going in either direction can see the sign. There are three separate areas of the sign, but the total area containing advertising that would be visible on either side of the sign is 92 square feet. However, the total of both sides is 184 square feet. If one side were to be left blank, the sign would satisfy the interpretation of both plaintiff and the village solicitor, and apparently would satisfy their sense of aesthetics.

The design committee of Canfield approved the sign; therefore, we assume that the members of this committee found that the sign did not violate the aesthetic purpose of the Canfield ordinances. The trial judge, at the request of counsel, personally viewed the sign and found it to be a well-positioned, substantial, safe and attractive sign, discreetly arranged and a proper distance from the traveled portion of the highway, well within the confines of defendant's property.

The exhibits contained a model of the sign and two enlarged photographs taken from both directions. Neither plaintiff nor the village of Canfield introduced any evidence attacking the aesthetics of the sign. We agree with the finding of the trial court that the sign does not violate the aesthetic purpose of the Canfield ordinances.

The right to enact zoning regulations for aesthetic reasons is a recent development in our law. For a long time it was established law that any zoning solely on the basis of aesthetic reasons was an unconstitutional deprivation of a property right. However, there has been a recent relaxation of this principle. We have upheld zoning regulations as to the size of signs. However, this is not the issue in this case. The issue is whether a municipality can regulate

signs to the extent that signs facing perpendicular to a highway are permitted to have commercial advertising only on one side with the other side blank when the sign complies with all other relevant aesthetic considerations. We hold that such a result would be unreasonable, arbitrary, and ridiculous and an unconstitutional deprivation of property rights. See *People* v. *Murphy,* 195 N. Y. 126, 88 N. E. 17.

Mr. Harold Rowland, vice president of sales of the Ellet Neon Sign Company, who has had considerable experience in the installation of signs similar to the one at issue in this case in various municipalities for five or six years, testified that in the trade, custom and usage of the sign industry, a limitation on a sign to a 100 square foot area would be interpreted as applying to the viewing area of the sign. Thus, the following provision in Section 1133.09 (b) (2) of the Canfield planning and zoning code requiring that ''in computing the area of free-standing or protruding signs, all faces on which business name or advertising is displayed shall be considered sign area'' must be interpreted as meaning ''all faces of the sign in the view of any person looking at the sign.''

10 Ohio Jurisprudence 2d 242, Constitutional Law, Section 163, states as follows:

''Where the validity of an act is assailed, and there are two possible interpretations, one of which would render it valid, and the other invalid, the court should adopt the former, so as to bring the act into harmony with the Constitution.''

Thus, the only way that the above provision in section 1133.09 (b) and (c) of the Canfield planning and zoning code can be constitutionally valid when applied to signs such as the one at issue in this case is to accept Mr. Rowland's interpretation. We are of the opinion that such interpretation is the only constitutional interpretation of section 1133.09 (b) and (c) of the Canfield planning and zoning code. Therefore, we hold that the design committee properly interpreted the provision; that their approval of the sign and the subsequent issuance of the zoning permit to

defendant Cook Chevrolet, Inc., by the zoning inspector was a legitimate exercise of authority vested in them; and that defendant had a valid zoning permit issued to it on January 4, 1971.

We will now discuss the attempts of various officials of the village of Canfield to revoke this permit.

Section 1137.02 (b) of the Canfield planning and zoning code provides that an appeal from any decision of the zoning inspector may be taken to the planning commission within twenty days after the decision by any person aggrieved or by any official of the municipality affected by any decision of the zoning inspector.

The letter dated January 7, 1971, from William E. Masters to the planning commission could have qualified as an appeal from the decision of the zoning inspector under this ordinance, however Mr. Masters did not appeal the decision of the zoning inspector made January 4, 1971, but appealed the decision of the design committee made December 14, 1970. Mr. Masters' appeal from the design committee was not timely filed pursuant to 1133.11 (d) of the Canfield planning and zoning code.

Mr. Masters is a member of the planning commission. The planning commission did not take any action on the validity of this zoning permit; therefore, we conclude that the planning commission, of which Mr. Masters was a member, decided that there was no valid appeal from the decision of the zoning inspector before them. Since there was no valid appeal of the decision of the zoning inspector before the planning commission, we hold that their order of January 14, 1971, to stay all proceedings in regard to the sign of Cook Chevrolet, Inc., had no affect on the zoning permit at issue in this case.

If anyone adversely affected by such decision felt that the decision of the planning commission was erroneous, both section 1137.04 (d) of the Canfield planning and zoning code and R. C. 2506.01 provide for an appeal to the court of common pleas.

Section 5.04 of the Canfield charter provides for the powers and duties of the manager, but there is no specific

authority granted to the village manager under which the manager can revoke a zoning permit issued by the zoning inspector. Therefore, we agree with the decision of the trial court that the Canfield manager had no authority to revoke this zoning permit, and that defendant still has a valid zoning permit to erect the sign at issue.

Finally, we will discuss the procedural questions concerning the right of plaintiff to bring this action (for himself and the village of Canfield).

As we have previously pointed out, Section 1137.02 (b) of the Canfield planning and zoning code permits any official of the municipality affected by a decision of the zoning inspector to appeal to the planning commission within twenty days after such decision. No official of the village of Canfield exercised his right to appeal the issuance of the zoning permit to the planning commission, and no action was filed pursuant to R. C. 2506.01.

In *Eggers* v. *Morr*, 162 Ohio St. 521, the Ohio Supreme Court held, in paragraph one of the syllabus, as follows:

"Where an administrative agency has jurisdiction to make an order in a matter pending before it, and a right of appeal from such order to the Court of Common Pleas is provided by law to any person adversely affected thereby, such person is not authorized to bring an independent action in equity to enjoin the carrying out of such order, where the grounds relied upon in seeking the injunction are such as could be fully litigated in the appeal authorized by law."

See 29 Ohio Jurisprudence 2d 204, Injunctions, Section 32.

We hold that inasmuch as the village of Canfield did not appeal the issuance of the zoning permit to the planning commission, it had no right to join in the prayer of plaintiff for the injunction sought by plaintiff in the trial court and, therefore, had no right to appeal the order of the trial court, denying such injunction, to this court.

Even if the village of Canfield had a right to appeal to this court, we would find its assignments of error to be without merit. Its assignments of error question whether

the trial judge's memorandum opinion complies with the request of the village of Canfield for conclusions of fact found separately from conclusions of law. We hold that the trial judge's opinion was detailed enough to satisfy such request. Civil Rule 52. 53 Ohio Jurisprudence 2d 368, Trial, Section 403.

Plaintiff resides somewhere between a mile and a mile and a half away from the property of defendant Cook Chevrolet, Inc., and we agree with the trial court's decision that plaintiff does not qualify under R. C. 713.13 or Section 1135.09 of the Canfield planning and zoning code as a proper person to bring an action under these provisions.

Plaintiff filed his complaint pursuant to R. C. 733.56 and 733.59. The trial court held that plaintiff did not qualify under these sections as a proper person to bring this action because a zoning permit is not a contract. We agree with the trial judge that a zoning permit is not a contract, and, therefore, this action does not come under the contract provisions of R. C. 733.56. *State, ex rel. The Ohio Hair Products Co.,* v. *Rendigs,* 98 Ohio St. 251; *State, ex rel. Cook,* v. *Turgeon,* 84 Ohio App. 287; 34 Ohio Jurisprudence 2d 355, Licenses and Permits, Section 2; 8 Ohio Jurisprudence 2d 279, Buildings, Section 28; 1 Yokley, Zoning Law and Practice, Section 9-8, p. 425 (3rd ed.).

However, R. C. 733.56 also provides for "an order of injunction to restrain * * * the abuse of its corporate powers."

The only allegation in plaintiff's complaint that could constitute "abuse of corporate powers" is that the design committee approved this sign, which was in excess of the maximum sign area, and that the zoning inspector issued a zoning permit in violation of section 1133.09 (b) (2 and 3) of the Canfield planning and zoning code. We have already held that the approval of the sign by the design committee and the issuance of the zoning permit to defendant was a legitimate exercise of authority invested in them; therefore, we hold that there was no abuse of corporate powers in the issuance of the zoning permit.

However, we do feel that there was an abuse of powers

by various officials of Canfield who disagreed with the issuance of the zoning permit. We recognize that an honest disagreement existed as to the propriety of the issuance of this zoning permit, but the Canfield planning and zoning code provided a procedure to resolve any such disagreement. Cook Chevrolet, Inc., complied with the procedural provisions of the Canfield code in obtaining their zoning permit. However, the Canfield officials who disagreed with the issuance of the permit did not comply with the provisions of the Canfield planning and zoning code to revoke this permit while they vigorously disputed the legality of the permit. The attempted revocation of the permit by the village manager was an abuse of corporate powers as was the arrest of the three employees of the Ellet Neon Sign Company and the charging of Anthony C. Cook with a violation of the Canfield ordinances.

As a sort of anticlimax, we will continue the discussion on plaintiff's right to bring this action.

Generally speaking, where the municipal corporation is estopped to maintain an action, the taxpayer is also estopped. *Vollmer* v. *Village of Amherst*, 140 Ohio St. 257 at 262; 52 Ohio Jurisprudence 2d 41, Taxpayers' Action, Section 27.

Since the village of Canfield did not exhaust the administrative remedies provided by Section 1137.02 (b) of the Canfield planning and zoning code, it was estopped from filing an action for injunction against defendant as was done in this case.

However, the question arises as to whether the ineptitude or inaction of the Canfield officials in failing to properly appeal the decision of the zoning inspector to the planning commission precluded the plaintiff-taxpayer from obtaining a judicial determination of the legality of the decision of the design committee and the zoning inspector as to whether the dimensions of this sign complied with Section 1133.09 (b) (2 and 3) of the Canfield planning and zoning commission. This question has given this court considerable difficulty.

R. C. 713.13 and section 1135.09 of the Canfield plan-

ning and zoning code limit the right to bring actions in injunction to restrain violations of an ordinance to the municipal corporation or the owner of contiguous or neighboring property who would be especially damaged by such violation. See *Connelly* v. *Morris*, 69 Ohio Law Abs. 395 at page 399; *Schenker* v. *Zegiob*, 31 Ohio Law Abs. 597; 58 Ohio Jurisprudence 2d 623, Zoning, Section 168.

Even if the complaining owner's property adjoins the property which is the subject of the complaint it has been held that R. C. 713.13 gives the owner of property the right to maintain an action for injunctive relief only if it is shown that such owner "would be especially damaged by such violation" of a zoning ordinance. *McVey* v. *Reichley*, 105 Ohio App. 319.

We hold that the right of a Canfield taxpayer to bring an action in injunction in any zoning violation case is governed by R. C. 713.13 and Section 1135.09 of the Canfield planning and zoning code. If a zoning violation constitutes an "abuse of corporate power," a taxpayer in Canfield who qualifies under R. C. 713.13 or Section 1135.09 of the Canfield planning and zoning code may bring an injunction action pursuant to either R. C. 713.13 or R. C. 733.56 and 733.59, but a taxpayer in Canfield who does not qualify under R. C. 713.13 or Section 1135.09 of the Canfield planning and zoning code can not bring an injunction action in a zoning case under either R. C. 713.13, or R. C. 733.56 and 733.59.

A review of the evidence in this case does not reveal any interest of plaintiff in this particular sign that would entitle him to bring this action, and plaintiff has neither alleged, nor proved that any fraud or improper conduct or action on the part of either the design committee, zoning inspector, or defendant, outside of his allegation that the applicable Canfield ordinance was violated in the issuance of this permit.

In conclusion, we agree with the decision of the trial court to the extent that plaintiff is not a proper party to bring an injunction action against defendant, Cook Chevrolet, Inc.

Civil Rule 57 and R. C. 2721.03 enables plaintiff to file a declaratory judgment action as to the construction of section 1133.09 (b) (2 and 3) of the Canfield planning and zoning code in its general application to signs such as the one at issue in this case, because such ordinance could affect plaintiff's neighborhood as well as the rest of Canfield.

We feel that plaintiff had a right to bring a declaratory judgment action against the village of Canfield. In the interests of justice, we will consider plaintiff's complaint as a declaratory judgment action against the village of Canfield.

*Judgment affirmed.*

O'NEILL, P. J., concurs.
JOHNSON, J., not participating.