WESTGATE SHOPPING VILLAGE et al., Appellants and Cross–Appellees,

v.

CITY OF TOLEDO et al., Appellees and Cross–Appellants.

[Cite as *Westgate Shopping Village v. Toledo* (1994), 93 Ohio App.3d 507.]

Court of Appeals of Ohio,
Lucas County.

No. L–93–092.

Decided March 11, 1994.

508

*Sue Sikkema* and *Thomas Zaremba,* for appellants and cross-appellees.

*James N. Turner* and *Teresa Grigsby,* for appellees and cross-appellants.

GLASSER, Judge.

These consolidated cases are before the court on appeal from a judgment of the Lucas County Court of Common Pleas in which the court affirmed the decisions of the Toledo City Plan Commission and the Toledo City Council in an administrative appeal (case No. 91–3451), granted summary judgment in favor of Franklin Park Mall, Inc., the city of Toledo and Toledo City Council in a declaratory relief action (case No. 91–3452), and granted summary judgment in favor of the city of Toledo, the Toledo City Council and Franklin Park Mall, Inc.,

in a taxpayer action (case No. 91–3872). For the following reasons, we affirm the judgment of the court below.

The Franklin Park Mall (the "Mall") is located in Toledo, Lucas County, Ohio, on 96.383 acres of property with a C–4 zoning classification. On July 25, 1991, defendant-appellee, Franklin Park Mall, Inc. ("Franklin Park"), the owner of the Mall, filed a petition for a major change/amendment to the Mall's existing C–4 site plan with the Toledo–Lucas County Plan Commission. Franklin Park proposed to increase the gross leasable area of the Mall by 246,000 square feet, to which 186,000 square feet would be devoted to a new two-story department store and 60,000 square feet would be devoted to a one-story expanded retail area.

On September 5, 1991, the Toledo City Plan Commission considered the requested amendment at an open meeting. At this meeting, Gary McBride, the applicant's counsel, representatives of the Rouse Company (the developer of the project) and the Division of Traffic Engineering, as well as Steve Serchuk of Serchuk Commercial Realtors and Stu Irving of Midwest Paper Specialties, spoke in support of the project. In addition, attorneys William Connelly and Michael Jilek spoke in opposition to the project on behalf of taxpayers and property owners, as did a representative of Westgate Village Shopping Center. After consideration of the application and comments of interested persons, the commission recommended that the Toledo City Council approve the request, subject to several specific conditions regarding traffic engineering, engineering and construction. On September 18, 1991, the City Council Committee of the Whole for Zoning and Planning conducted a public hearing at which a number of people, including representatives of the various parties involved in this appeal, spoke in favor of and against the proposed expansion of the Mall. At the conclusion of that hearing, the committee voted seven to one to recommend passage of an ordinance allowing for the expansion of the Mall. Thereafter, on September 24, 1991, the Toledo City Council passed Ordinance 733–91:

"Approving an amendment to Franklin Park Mall C–4 Site Plan granted by Ordinance No. 153–69, as amended, to increase the size of the facility; waiver regarding facia signs and a waiver regarding parking; subject to certain conditions; and declaring an emergency."

The conditions specified in the ordinance dealt with engineering and construction, traffic engineering, the posting of a performance bond and other minor matters.

Westgate Village Shopping Center ("Westgate") is a shopping center located approximately two miles from the Mall. On October 18, 1991, Westgate filed a notice of appeal with the Lucas County Court of Common Pleas (case No. 91–3451), pursuant to R.C. Chapters 2505 and 2506, appealing the passage of Ordinance 733–91 and naming the city of Toledo and Toledo City Council as

appellees. In particular, Westgate asserted that the ordinance was unconstitutional, unreasonable, arbitrary, contrary to law, and not supported by a preponderance of substantial, reliable and probative evidence. On that same day, Westgate filed a declaratory judgment action (case No. 91–3452), pursuant to R.C. Chapter 2721, against the city of Toledo, Toledo City Council and Franklin Park, appellees/cross-appellants ("appellees"). Westgate asserted that Ordinance 733–91 directly and adversely affected its rights, status and other legal relations and was enacted in violation of the Toledo Municipal Code ("TMC").

On November 27, 1991, Westgate and six individual taxpayers ("appellants"), filed a taxpayer's action (case No. 91–3872) in the lower court against the city of Toledo and the Toledo City Council. Franklin Park subsequently intervened as a party defendant in the taxpayer action. Appellants asserted that passage of the ordinance was an unlawful and unreasonable abuse of the corporate powers of the city of Toledo, and that by not requiring Franklin Park and the plan commission to comply with the TMC, city council had abused its corporate powers. Appellants then demanded an injunction, restraining the city's abuse of its corporate powers as embodied in the ordinance. Subsequently, this case was consolidated with the administrative appeal and the declaratory judgment action, and the cases proceeded under case No. 91–3451.

On December 17, 1991, the city of Toledo and Toledo City Council filed a joint motion for summary judgment and dismissal in which Franklin Park subsequently joined. In particular, appellees asserted that appellants did not have standing to bring any of the three actions at issue. The motion was opposed, and on August 3, 1992, the lower court filed its opinion and judgment entry denying summary judgment in the declaratory judgment and taxpayer actions, denying dismissal in the administrative appeal, and specifically finding that appellants had standing to bring all three cases. Thereafter, the parties filed briefs in the administrative appeal, the city of Toledo, Toledo City Council and Franklin Park filed motions for summary judgment in the declaratory judgment and taxpayer actions, and Westgate and the taxpayers filed a motion for summary judgment and for permanent injunction in the taxpayer action. Upon consideration of the voluminous record in this case, the lower court, on March 8, 1993, filed an opinion and judgment entry finding that all of the matters should be resolved in favor of defendants-appellees and against Westgate and the taxpayers. It is from that judgment that appellants filed their appeal and appellees filed their cross-appeal.

## I. Standing

We will first address the cross-appeal, wherein appellees raise the following assignment of error:

"The Court of Common Pleas, Lucas County, Ohio, erred as a matter of law in ruling that the Cross–Appellees had standing to prosecute the consolidated administrative appeal, declaratory judgment action and taxpayer suit for injunctive relief."

The lower court determined the standing issue on motions for summary judgment and dismissal. Our initial concern is the applicable standards of review in our consideration of this issue.

In reviewing a trial court's ruling on a summary judgment motion, we are guided by the requirements of Civ.R. 56(C). That is, summary judgment may only be granted on a particular claim if there remains no genuine issue as to any material fact and, when construing those facts most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. See, also, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Accordingly, this is the standard to be applied to the declaratory judgment and taxpayer actions.

An administrative appeal filed pursuant to R.C. Chapter 2506, however, presents a different standard altogether, as it is governed by statute. R.C. 2506.01 provides that "[e]very final order, adjudication, or decision of * * * any political subdivision of the state may be reviewed by the court of common pleas * * *." R.C. 2506.04 then provides:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

Accordingly, as to the administrative appeal, we must determine whether Westgate had standing to bring such appeal as a matter of law.

## A. Administrative Appeal

In concluding that Westgate had standing to file an administrative appeal pursuant to R.C. 2506.01, the lower court determined that Westgate was a party directly affected by the passage of Ordinance 733–91. For the following

reasons, we agree. R.C. 2506.01 grants appeal rights from decisions of any agency of any political subdivision, and provides in relevant part:

"A 'final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person * * *."

The Supreme Court of Ohio has consistently conferred standing to bring an administrative appeal under R.C. 2506.01 as follows:

"A resident, elector and property owner of a township, who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of a zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to a court, has a right of appeal to the Common Pleas Court if the appeal is properly and timely made pursuant to Sections 519.15 and 2506.01 to 2506.04, inclusive, and Chapter 2505, Revised Code." *Roper v. Richfield Twp. Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, 18 O.O.2d 437, 180 N.E.2d 591, syllabus.

The Ohio Supreme Court, however, in further explaining the standing requirements, has narrowed the focus of inquiry to whether the appellant's property rights were directly affected by the administrative order appealed from. *Schomaeker v. First Natl. Bank* (1981), 66 Ohio St.2d 304, 311–312, 20 O.O.3d 285, 289–291, 421 N.E.2d 530, 536–537. In *Schomaeker*, a contiguous property owner who had appeared with counsel at the public hearing was held to be within the class of persons directly affected by the village planning commission's passage of a use variance. In *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 27, 591 N.E.2d 1203, 1205, however, the court stated that "a private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large." Those are the extremes. Accordingly, to determine if a party has standing to bring an appeal under R.C. 2506.01, we "must look beyond physical proximity to determine if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person." *Am. Aggregates Corp. v. Columbus* (1990), 66 Ohio App.3d 318, 322, 584 N.E.2d 26, 29.

■ The evidence presented to the lower court, comprising the administrative record as corrected by the parties, reveals that Westgate's objections to the ordinance were based on concerns about increased traffic in the Franklin Park area, increased business competition, a decrease in Westgate's property values and objections to the procedures followed by the commission and Toledo City Council in passing the ordinance. Concerns regarding increased traffic in the

Franklin Park area and regarding the procedures to be followed in the passage of a zoning ordinance are concerns shared equally by the public at large and, therefore, are not adequate grounds upon which to confer standing to bring an appeal pursuant to R.C. 2506.01. In concluding that Westgate was a party directly affected by the passage of the ordinance, the trial court stated:

"It is undisputed that a major draw to the Westgate Shopping Center is the Lion store located there. It is also undisputed that Lion will be opening a Lion store in the Mall. A reasonable inference can be made that some of the people who shop at the Westgate Lion store will instead shop at the Franklin Park Lion store when the latter establishment opens. No reciprocal effect is likely. It is obvious, therefore, that in such a case some money that would have been spent at Westgate's shopping center will instead be spent at the Mall. Both Westgate and its tenants will be directly affected by the Mall expansion."

In our view, the court concluded that increased business competition directly affected Westgate's rights, duties, privileges, benefits, or legal relationships. Increased business competition "is not a proper basis upon which standing can be conferred." *Am. Aggregates Corp., supra*, 66 Ohio App.3d at 322, 584 N.E.2d at 29. However, evidence that the value of an appellant's property may be reduced by the enactment of a zoning ordinance will support a finding that an appellant was directly affected by the zoning ordinance. *Stoll v. Gulf Oil Corp.* (C.P.1958), 79 Ohio Law Abs. 145, 155 N.E.2d 83. Accordingly, although the trial court conferred standing on Westgate to bring the R.C. 2506.01 appeal for an erroneous reason, evidence before the court did support the court's conclusion that Westgate had standing to bring such an appeal, and the court did not err in failing to grant appellees' motion to dismiss.

### B. Declaratory Judgment Action

■ In its complaint for declaratory judgment, Westgate alleged that Ordinance 733–91 directly and adversely affected its rights, status or other legal relations. In particular, Westgate asserted that Franklin Park failed to comply with TMC 1133.03; that the commission and its staff recommended approval of the C–4 site plan amendment in violation of TMC 1133.04; that the commission's report did not contain the findings as required by TMC 1133.04; and that in passing the ordinance in violation of the TMC, Toledo City Council denied Westgate a realistic opportunity to be heard in violation of its rights and in violation of its property interests. Westgate thus demanded a declaratory judgment that Franklin Park failed to comply with TMC 1133.03 in submitting its petition to amend the Mall's C–4 site plan; that the city plan commission recommended passage of the ordinance in violation of TMC 1133.03 and 1133.04; that Ordinance 733–91 was enacted in violation of TMC 1133.03 and 1133.04; that

the ordinance is unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable and probative evidence and is therefore void; and that the ordinance was unlawfully enacted in violation of plaintiff's rights and interests.

■ R.C. 2721.03 confers standing in declaratory judgment actions and provides in relevant part:

"Any person * * * whose rights, status, or other legal relations are affected by a * * * municipal ordinance * * * may have determined any question of construction or validity arising under such * * * ordinance * * * and obtain a declaration of rights, status, or other legal relations thereunder."

Accordingly, standing to challenge the validity of an ordinance through a declaratory judgment action is conferred upon those whose rights, status or other legal relations are affected by the municipal ordinance at issue. As with appeals under R.C. 2506.01, a person's legal interests must be affected by the ordinance. Those with simply a practical interest in the outcome of a declaratory judgment action are not proper parties to such an action. *Driscoll v. Austintown Assoc.* (1975), 42 Ohio St.2d 263, 273, 71 O.O.2d 247, 252–253, 328 N.E.2d 395, 402.

In concluding that Westgate had standing to bring the declaratory judgment action at issue, the lower court cited *Brooks v. Cook Chevrolet, Inc.* (1972), 34 Ohio App.2d 98, 112, 63 O.O.2d 161, 168, 296 N.E.2d 290, 299, and stated that because "the propriety of the procedure used by the defendants in approving the expansion of a C–4 shopping center may again in the future arise when someone requests to alter the character of Westgate's shopping center itself * * * Westgate will be directly affected by the action taken by the City and Council." *Brooks,* however, involved a municipal ordinance that regulated signs throughout the village. In that case, the court held that under Civ.R. 57 and R.C. 2721.03, a taxpayer could file a declaratory judgment action requesting the construction of a municipal zoning ordinance regulating signs because such ordinance could affect the taxpayer's neighborhood as well as the rest of the municipality. Clearly, signs, and the regulation of them, affect the entire citizenry of a municipality. The ordinance at issue in the present case is a site-specific ordinance which regulates only the property of the Franklin Park Mall. Westgate did, however, assert and present evidence that in passing the ordinance, appellees may have denied Westgate and the other opponents a constitutional right to be heard, and that the effect of the ordinance would be to decrease Westgate's property values. As such, Westgate asserted that its legally cognizable interests were affected by the ordinance, and Westgate therefore had standing to challenge the ordinance through a declaratory judgment action. The court did not err in denying appellees' motion for summary judgment on standing grounds.

## C. *Taxpayer Action*

Westgate and the taxpayers brought their complaint for injunctive relief pursuant to Section 116 of the Toledo City Charter and asserted that the passage of Ordinance 733–91 constituted an unlawful and unreasonable abuse of the corporate powers of the city of Toledo. More specifically, appellants averred that the commission and city council approved and passed the ordinance in contravention of Sections 1133.03 and 1133.04 of the TMC, and demanded an injunction restraining the abuse of the city of Toledo's corporate powers embodied in the ordinance, and restraining the council, the Toledo City Manager, the Toledo City Plan Commission or any city of Toledo employee from taking any action under the ordinance.

The Toledo City Charter provides in relevant part:

"Section 113. *Application for injunction.*

"The City Attorney shall apply in the name of the City, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the City, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the City in contravention of law, or which was procured by fraud or corruption.

" * * *

"Section 116. *Action by taxpayer.*

"In case the City Attorney, upon written request of any taxpayer, fails to make any application provided for in the three preceding sections, such taxpayer may institute suit or proceedings for such purpose in his own name on behalf of the City. No such suit or proceedings shall be entertained by any court until such request to the City Attorney shall first have been made, nor until the taxpayer shall have given security for the costs of the proceeding."

To bring a taxpayer action under these sections of the Toledo City Charter, one need only be a taxpayer who has requested in writing that the city attorney institute an action for an injunction, and such request must be denied. In the present case, there is no dispute that appellants are taxpayers. Moreover, the record reveals that the taxpayers presented two written requests to the city attorney to file an action seeking to enjoin the alleged abuse of corporate powers, but the city attorney declined to file such action. Therefore, Westgate and the individual taxpayers had standing to institute the taxpayer action for injunction, and the lower court did not err in so holding.

Accordingly, because the plaintiffs in each of the individual cases involved in this appeal had standing to bring the actions, appellees' assignment of error is found not well taken.

*II. Merits*

We will now address appellants' appeal, wherein they contend:

*"Error 1:* The court below erred in holding that Sections 1133.03 and 1133.04 of the *Toledo Municipal Code* do not apply to the Franklin Park Mall C–4 Site Plan Amendment approved in the City of Toledo, Ohio, Ordinance 733–91.

*"Error 2:* The court below erred in holding that there were no violations of Due Process in the enactment of the City of Toledo, Ohio Ordinance 733–91.

*"Error 3:* The court below erred in holding that the Franklin Park Mall C–4, Site Plan Amendment approved in the City of Toledo, Ohio, Ordinance 733–91, substantially complies with Sections 1133.03 and 1133.04 of the *Toledo Municipal Code.*"

The first and third assignments of error will be considered together, since they are interrelated.

The court below concluded that TMC 1111.01, rather than TMC Chapter 1133, controlled Franklin Park's petition to amend its C–4 site plan. The court then found that because there was no dispute regarding Franklin Park's compliance with TMC 1111.01, appellees were entitled to summary judgment on that issue in the taxpayer and declaratory judgment actions, and affirmed the decision in the administrative appeal. The court, however, further determined that even if TMC Chapter 1133 applied to major C–4 site-plan amendments, Franklin Park and the commission substantially complied with the terms of that chapter.

■ In their first and third assignments of error, appellants contend that the lower court erred in concluding that TMC Chapter 1133 did not apply to Franklin Park's petition for a C–4 site-plan amendment, and in concluding that even if it did apply, appellees substantially complied with its requirements. In particular, appellants contend that the provisions of TMC 1133.01, 1133.03 and 1133.04 apply to petitions to amend C–4 site plans; that these sections set forth mandatory procedural requirements that cannot be waived or excused by council; that Franklin Park and the commission failed to comply with these requirements; and that even if a substantial compliance test can be applied to mandatory require-ments, whether appellees substantially complied with the requirements is a question properly left to a trier of fact after a trial on the merits.

The Supreme Court of Ohio in *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96–97, 573 N.E.2d 77, 80, summarized the rules of statutory construction as follows:

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation. * * * However, where a statute is found to be subject to various interpretations,

a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent. * * * The primary rule in statutory construction is to give effect to the legislature's intention. * * * Legislative intent must be determined from the language of the statute itself, * * * as well as from other matters, see R.C. 1.49. In determining intent, it is the duty of the court to give effect to the words used, not to delete words used or insert words not used." (Citations omitted.)

With these principles in mind, we now direct our attention to the statutes at issue.

Part Eleven of the TMC sets forth the Planning and Zoning Code of the city of Toledo. TMC Chapter 1111 and Section 1111.01 are both entitled "Amendments." Section 1111.01 provides in pertinent part:

"(a) Council may, after public notice and hearings as provided in this section and after report by the City Plan Commission to be made within ninety days after referral to the Commission, amend, supplement or change the text or District Map herein or subsequently established.

"(b) A public hearing shall be held by Council on all proposed amendments to the Zoning Ordinance, including changes in the text or District Map.

" * * *

"(h) A property owner, lessee or option holder may petition Council for an amendment to the text or District Map of this Zoning Ordinance. The party or parties petitioning for a text amendment shall deposit with the Clerk of Council the fee set forth for the requested change to cover the approximate cost of processing such petition; and *the party or parties petitioning for a District Map amendment or other zoning action upon a particular parcel shall deposit with the Central Permit Center the fee set forth below for the requested change:*

" * * *

"*Petition for major change to approved site plan* $200.00 plus the per acre fee charged for original development for that part of the plan directly involved in the amendment." (Emphasis added.)

In addition, under Section 1111.01(f), the TMC refers to "amendment, supplement or change." Accordingly, the city council, in enacting this chapter of the TMC, included in the definition of amendments a petition for a major change to an approved site plan. Moreover, the city council set forth procedures for applicants to follow in seeking such amendments.

Appellants contend that TMC Chapter 1133, rather than TMC Chapter 1111, governs the procedures to be followed by such applicants, and assert that the following sections of TMC Chapter 1133 are pertinent to the issues in this case:

"1133.01   Plan required.

"The C–4 Shopping Center District shall be laid out and developed as a unit according to an approved plan, as provided herein, in order to establish modern commercial centers of integrated design in appropriate locations in order to serve the areas and provide to the public in a safe and convenient manner the goods and services for which they are developed.

" * * *

"1133.03.   Procedure.

"The owner or owners of a tract of land which comprises five acres or more may submit to Council a plan for the use and development of such tract for the purposes of and meeting the requirements set forth in this section.   Such plan shall be accompanied by evidence concerning the feasibility of the project and its effects on surrounding property and other physical conditions, which plan and supporting evidence shall include each of the following:

"(a) A site plan defining the areas to be developed for buildings, the areas to be developed for parking, the location of pedestrian and vehicular circulation and the points of ingress and egress, including access streets where required, the location and height of walls, the provision of spaces for loading, the location, size and number of signs and adjustments to be made in relation to abutting land uses and zoning districts.

"(b) A report on the market to be served, the types and amount of service needed and general economic justification.

"(c) A traffic survey prepared by qualified experts indicating the effect of the proposed shopping center on adjacent streets and also indicating the anticipated points of origin and direction and the amount of traffic flow to and from the shopping center.

"(d) A statement of financial responsibility to assure construction of the planned shopping center, including landscaping, in accordance with the plan and the requirements of this section.

"1133.04.   Review and approval.

"Before any action thereon, the proposed planned shopping center plan together with the required statements and supplementary information shall be referred to the City Plan Commission for study and report and for public hearing.   If the Commission approves the plans, they shall then be submitted to Council for consideration and approval according to the proceedings of Section 1111.01.   The approval and recommendations of the City Plan Commission shall be accompanied by a report stating the reasons for approval and finding that the data and plans required in Section 1133.03 regarding the project or any approved modifica-

tion or addition thereof is economically sound and desirable; will not adversely affect the health, safety or general welfare of the citizens; will not result in excessive traffic congestion and will not result in any undue depreciation of values on surrounding property."

Upon review of TMC Chapter 1133 in its entirety, however, and in our attempt to determine the procedures applicable to applications for amendments to C–4 site plans, we further find TMC 1133.05 to be instructive. That section reads:

"1133.05. Delay in construction.

"In the event that construction of the shopping center is not started within two years of the date of *approval by Council,* the District shall revert to the same zoning classification existing *prior to approval of the C–4 District* and the zoning regulations of such prior district shall thereupon be in full force and effect." (Emphasis added.)

In our opinion, reading all of the provisions of TMC Chapter 1133 together, only one conclusion can be reached. That is, TMC Chapter 1133 applies only to applications for new C–4 shopping center districts. The "approval" referred to in the ordinance is clearly approval of a new C–4 shopping center district through a change in zoning classification, and the ordinance sets forth the requirements one must follow in order to obtain such a change. Once approval is obtained, the owner of the tract must develop it in accordance with the approved plan, or the zoning classification reverts back to what it was prior to approval. Although appellants contend that the phrase "or any approved modification or addition thereof" in TMC 1133.04 refers to and includes site-plan amendments, it is noteworthy that in drafting the ordinance, the Toledo City Council did not use the word "amendment." It did, however, use the word "amendment" in TMC 1111.01, and specifically included petitions for major changes to approved site plans in that section. More importantly, TMC 1111.01 specifically governs amendments to zoning ordinances, which in fact is what appellees sought through their petition. They did not seek a change in zoning classification. We must assume the city council was aware of its use of the word "amendment" in TMC 1111.01 when it drafted TMC Chapter 1133, and purposely chose not to use the word "amendment" in TMC Chapter 1133. The only conclusion we can reach, therefore, is that TMC Chapter 1133 and the procedural requirements therein, do not apply to petitions for major changes to approved C–4 site plans.

The undisputed evidence before the court below indicated that appellees followed all of the procedures set forth in TMC 1111.01 in passing Ordinance 733–91. Accordingly, the first assignment of error is not well taken.

■ In their third assignment of error, appellants contend that the lower court erred in concluding that appellees substantially complied with the requirements

of TMC 1133.03 and 1133.04. Appellants assert that not only are those the applicable provisions of the TMC, but that they set forth mandatory procedural requirements. As we held above, TMC 1111.01 applied to the petition to amend the C–4 site plan. Nevertheless, we further conclude that substantial compliance with TMC 1133.03 and 1133.04 will suffice in an application for approval of a new C–4 shopping center district. Courts of Ohio have consistently held that where the purpose of statutory requirements is served, "exact and strict compliance is not required but, instead, substantial compliance with mandatory statutory requirements is sufficient." *Olen Corp. v. Franklin Cty. Bd. of Elections* (1988), 43 Ohio App.3d 189, 198, 541 N.E.2d 80, 88. The third assignment of error is, therefore, not well taken.

█ Appellants' second and final assignment of error proposes that the trial court erred in concluding that appellants' due process rights were not violated in the passage of Ordinance 733–91. Appellants assert that in the passage of the ordinance, they were denied their right to meaningful notice and a meaningful opportunity to be heard in that they had no notice of the city's agreement with the developer to disregard the mandatory requirements of TMC 1133.04; they had no notice or opportunity to respond to *ex parte* arguments by the developer and the city; they had no notice of the city's joint interest with the developer; and they had an inadequate opportunity to respond to the traffic study.

As to appellants' first argument, because TMC Chapter 1133 did not apply to the petition at issue, appellants could not have been prejudiced by any agreement not to abide by its requirements. Similarly, while TMC 1133.03 requires the city council to consider traffic studies in considering an application for a new C–4 shopping center district, TMC 1111.01 contains no such requirement. Nevertheless, the commission did consider numerous arguments by various interested parties regarding the Mall expansion's effect on traffic flow in the area. Westgate's representatives appeared before the commission and expressed their concerns regarding the effect on traffic. Thereafter, they were provided with a copy of the traffic survey, examined it and raised the issue again before the City Council Committee of the Whole for Zoning and Planning. Finally, council's approval of the ordinance was contingent upon compliance with numerous traffic engineering requirements aimed at easing the strain on roadways surrounding the Mall. We do not see how appellants were prejudiced by any alleged denial of their due process right to be heard on the issue of traffic considerations.

█ As to appellants' arguments regarding the "agreement" between the city and the developer, appellants refer to a July 9, 1991 meeting between representatives of Franklin Park and the city, wherein the city instructed Franklin Park as to the procedures to follow in filing its petition. We agree with the trial court's conclusion that "there is nothing inherently violative of due

process in seeking advice from a city's employees and agents regarding the procedure to use in filing a petition under the city's zoning ordinance." Moreover, due process requires a meaningful opportunity to be heard before a neutral tribunal. *Goldberg v. Kelly* (1970), 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287, 299. The "agreement" referred to by appellants was a discussion between representatives of Franklin Park and members of the city law department. The matter of the petition was then heard before the city plan commission and the city council. There is nothing in the record that suggests that any member of either of these bodies agreed before the official vote to approve the ordinance in question. Moreover, there is nothing in the record that indicates that any member of these voting bodies met with representatives of Franklin Park prior to the public hearing on the proposed ordinance. Accordingly, we find appellants' arguments asserting due process violations not supported by the record, and the second assignment of error is not well taken.

We therefore conclude that no genuine issue of material fact remained and, when viewing the evidence in a light most favorable to appellants, the lower court could only conclude that appellees were entitled to judgment as a matter of law. The court, therefore, did not err in granting summary judgment to appellees in the declaratory judgment and taxpayer actions. Neither did the court err in affirming the decision of the Toledo City Council, as the ordinance was not unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable, and probative evidence.

On consideration whereof, the court finds that substantial justice has been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. We further find that there were reasonable grounds for this appeal. Costs of this appeal to appellants.

*Judgment affirmed.*

ABOOD, P.J., and SHERCK, J., concur.